RECEIVED

JUL 03 2013

BY MAIL

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

PURZEL VIDEO GMBH,

    Plaintiff,

vs.

DOES 1-91,

    Defendants.

_____/

CASE No. 4:12-CV-02292-AGF

RESPONSE TO RESPONSE TO MOTION QUASH OR MODIFY SUBPOENA (Docket numbers 12 and 12-1)

### DEFENDANT REQUESTS THE COURT REVIEW THE RECENT JUDGMENT IN SIMILAR CASE NO. C13-0308MJP-RSL AND GRANT THE MOTION TO QUASH (DOCKET NOS. 12 AND 12-1.)

"the Court admits to some concerns regarding both the appropriateness of joinder and the possibility that the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties. The Court is not alone... " (Please see the attachment for the full text)

### DEFENDANT'S RESPONSE TO PLAINTIFF PURZEL VIDEO GMBH'S RESPONSE TO DOE NUMBER 33'S PRO SE MOTION TO QUASH.

On March 26ˈ 2013 Plaintiff Purzel Video GMBH's filed a response to the Motion to Quash submitted by Doe 33.

Plaintiff states - "Doe 33 takes great care to deny liability of his guests, wife and neighbors, yet fails to deny his own liability"

Failure to deny Doe 33's responsibility is not an admission that Doe 33 downloaded the work; it is an omission. Defendant Doe 33 did not download, upload, view, "swarm" around or have any connection whatsoever to Plaintiff's purportedly vulgar movie.

Plaintiff states - "In fact, Doe 33 tacitly concedes that he downloaded the work at issue by rhetorically asking, 'Is it possible that malware used my IP address? Of course, there is always that chance."

To interpret a rhetorical question about the vulnerability of any computer to the hazards of malware as an admission of downloading the work is a ridiculous and specious argument. The Plaintiff's counsel must be unfamiliar with the definition of malware.

"Malware, short for malicious software, is software used or programmed by attackers to disrupt computer operation, gather sensitive information, or gain access to private computer systems. It can appear in the form of code, scripts, active content, and other software. 'Malware' is a general term used to refer to a variety of forms of hostile or intrusive software." (Source Wikipedia)

Doe 33 does not tacitly or otherwise concede to any wrongdoing whatsoever in this matter.

Defendant requests that the Court please review the attached documents and grant the Motion to Quash.

Dated: 7/1/2013                                   Respectfully submitted,

                                                  *s/John Doe*
                                                  John Doe (id 33)
                                                  *Pro se*

1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
7                                      AT SEATTLE

8        ZEMBEZIA FILM LTD.,

9            Plaintiff,
                                                    Case No. C13-0308MJP-RSL
10           v.
                                                    ORDER TO SHOW CAUSE AND
11       DOES 1 - 66,                               QUASHING SUBPOENAS

12           Defendants.

13

14

15           This action was filed on February 18, 2013. It is one of forty-eight

16   copyright infringement actions filed during a four month period by attorney Richard J.

17   Symmes against approximately 2,323 individual Doe defendants. The sixty-six

18   defendants in this case are represented by IP addresses linked to on-line sharing of the

19   movie "Adventures in Zambezia" between 12:16 am on October 7, 2012, and 2:32 am on

20   October 17, 2012. Although the evidence of internet activity shows that hours, if not

21   days, separated each defendant's allegedly infringing conduct, plaintiff alleges that all

22   sixty-six defendants participated in a single "swarm" utilizing interactive peer-to-peer file

23   transfer technology protocol called a BitTorrent to illegally copy and share "Adventures

24   in Zambezia." Plaintiff affirmatively alleges that the "swarm" aspect of the file-sharing

25   justifies joinder of these disparate defendants in a single lawsuit.

26

ORDER TO SHOW CAUSE
AND QUASHING SUBPOENAS - 1

1    On February 25, 2013, the Court granted plaintiff's motion to initiate early
2  discovery, including the issuance of subpoenas under Fed. R. Civ. P. 45 to internet
3  service providers, in an attempt to identify each Doe defendant. Only four defendants
4  have filed objections to the subpoena. Dkt. # 11, 21, 23, and 28. Despite the fact that
5  more than two months have elapsed since discovery was authorized, there is no indication
6  that any defendants have been served, nor has plaintiff amended its complaint to identify
7  the Doe defendants.

8    All BitTorrent cases filed in the Western District of Washington have been
9  referred to the undersigned for pretrial handling. Dkt. # 5. As the full extent of this
10 assignment has become clear, the Court admits to some concerns regarding both the
11 appropriateness of joinder and the possibility that the judicial authority of the United
12 States may be used to wrest improvident settlements from pro se litigants under threat of
13 huge statutory penalties. The Court is not alone:  other judicial officers in the Ninth
14 Circuit are beset by the same concerns and have taken various paths to mitigate the
15 potential for abuse. See, e.g., Ingenuity 13 LLC v. John Doe, No. 2:12-cv-9333-
16 ODW(JCx) (C.D. Cal. May 6, 2013); Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-
17 AA (D. Or. May 4, 2013).

18    Having reviewed defendants' motions to quash the subpoenas, the
19 remainder of the record in this and related cases, and relevant case law, it is hereby
20 ORDERED as follows:

21    1. Any and all subpoenas issued in the above-captioned matter are hereby
22 QUASHED. Plaintiff shall immediately notify the subpoena recipients that they need not
23 respond.

24    2. To the extent plaintiff has obtained identifying information regarding one or
25 more Doe defendants, whether through the service provider, defendant, or another source,
26

ORDER TO SHOW CAUSE
AND QUASHING SUBPOENAS - 2

1   it shall not utilize that information in any way. If plaintiff has already contacted one or
2   more of the defendants, it shall file under seal all correspondence or other written
3   communications (including emails) sent to defendants and a summary of any oral
4   communications. Plaintiff shall refrain from any further oral or written communications
5   with defendants unless expressly approved by the Court in advance.

6       3. Plaintiff shall, within fourteen days of the date of this Order, show cause why
7   the above-captioned matter should not be dismissed as to all defendants other than Doe 1
8   for improper joinder and/or pursuant to the Court's inherent authority to control its
9   docket.

10      4. Plaintiff shall, within fourteen days of the date of this Order, provide additional
11  information regarding (a) Zembezia Film (Pty) Ltd.'s ownership of the copyright at issue
12  and (b) Zembezia Film (Pty) Ltd.'s direct and indirect members/owners/stakeholders.
13  Plaintiff shall provide a copy of any and all transfer statements and/or work-for-hire
14  contracts supporting a determination that Zembezia Film (Pty) Ltd. has standing to pursue
15  this action. Plaintiff shall also supplement the corporate disclosure statement filed in this
16  action (Dkt. # 2) by providing the registration information for Zembezia Film (Pty) Ltd.
17  maintained by the Secretary of State and identifying all members/owners/stakeholders of
18  Zembezia Film (Pty) Ltd., both direct and indirect, in the form of an organizational tree
19  that reaches back far enough to reveal all individual members/owners/stakeholders and
20  publicly-traded corporations.

21      5. With the exception of the actions specifically set forth in this Order, the above-
22  captioned matter is hereby STAYED.

23

24          For all of the foregoing reasons, the pending motions to quash (Dkt. # 11,
25  21, 23, and 28) are GRANTED. The Clerk of Court is directed to place this Order to

26

ORDER TO SHOW CAUSE
AND QUASHING SUBPOENAS - 3

1    Show Cause on the Court's calendar for Friday, May 24, 2013.

2

3          Dated this 9th day of May, 2013.

4                        *Mvr S Lasnik*

5                       Robert S. Lasnik
                       United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER TO SHOW CAUSE
AND QUASHING SUBPOENAS - 4

1                                                                                          **O**

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11   INGENUITY 13 LLC,                              Case No. 2:12-cv-8333-ODW(JCx)

12                        Plaintiff,                **ORDER ISSUING SANCTIONS**

13          v.

     JOHN DOE,
14
                          Defendant.
15

16          "The needs of the many outweigh the needs of the few."
                        — Spock, *Star Trek II: The Wrath of Khan* (1982).
17

18                              **I.   INTRODUCTION**

19          Plaintiffs[1] have outmaneuvered the legal system.[2] They've discovered the

20   nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable

21   defense costs. And they exploit this anomaly by accusing individuals of illegally

22   downloading a single pornographic video. Then they offer to settle — for a sum

23   ─────────────
     [1] The term "Plaintiffs" used in this order refers to AF Holdings LLC, Ingenuity 13 LLC, as well as
24   related entities, individuals, and attorneys that collaborated in the underlying scheme fronted by AF
     Holdings and Ingenuity 13.
25   [2] This order concerns conduct committed in the following related cases: *AF Holdings LLC v. Doe*,
     No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-
26   6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-
     ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx)
27   (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal.
28   filed Sept. 27, 2012).

1  calculated to be just below the cost of a bare-bones defense. For these individuals,
2  resistance is futile; most reluctantly pay rather than have their names associated with
3  illegally downloading porn.    So now, copyright laws originally designed to
4  compensate starving artists allow, starving attorneys in this electronic-media era to
5  plunder the citizenry.

6        Plaintiffs do have a right to assert their intellectual-property rights, so long as
7  they do it right. But Plaintiffs' filing of cases using the same boilerplate complaint
8  against dozens of defendants raised the Court's alert. It was when the Court realized
9  Plaintiffs engaged their cloak of shell companies and fraud that the Court went to
10  battlestations.

11                        **II.   PROCEDURAL HISTORY**

12        The Court issued its February 7, 2013 Order to Show Cause re Sanctions to
13  allow counsel, Brett Gibbs, to explain why he ignored the Court's discovery-stay
14  Order, filed complaints without reasonable investigation, and defrauded the Court by
15  asserting a copyright assignment secured with a stolen identity. (ECF No. 48.) As
16  evidence materialized, it turned out that Gibbs was just a redshirt.

17        Gibbs's behavior in the porno-trolling collective was controlled by several
18  attorneys, under whom other individuals also took their orders. Because it was
19  conceivable that these attorneys (and others) were culpable for Gibbs's conduct, the
20  Court ordered these parties to appear.

21        The following additional parties were ordered to appear: (a) John Steele, of
22  Steele Hansmeier PLLC, Prenda Law, Inc., and/or Livewire Holdings LLC; (b) Paul
23  Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings LLC; (c) Paul
24  Duffy, of Prenda Law, Inc.; (d) Angela Van Den Hemel, of Prenda Law, Inc.;
25  (e) Mark Lutz, of Prenda Law, Inc., AF Holdings LLC, and/or Ingenuity 13 LLC;
26  (f) Alan Cooper, of AF Holdings LLC; (g) Peter Hansemeier, of 6881 Forensics, LLC;
27  (h) Prenda Law, Inc.; (i) Livewire Holdings LLC; (j) Steele Hansmeier PLLC; (k) AF
28  Holdings LLC; (l) Ingenuity 13 LLC; (m) 6881 Forensics, LLC; and (n) Alan Cooper,

1    of 2170 Highway 47 North, Isle, MN 56342. (ECF Nos. 66, 86.) These parties were
2    ordered to show cause why they should not be sanctioned for their behind-the-scenes
3    role in the conduct facially perpetrated by Gibbs. These parties were also ordered to
4    explain the nature of their operations, relationships, and financial interests.

5

### III.    LEGAL STANDARD

6        The Court has a duty to supervise the conduct of attorneys appearing before it.
7    *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish
8    contempt and to coerce compliance with issued orders is based on statutes and the
9    Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512
10    U.S. 821, 831 (1994). Though this power must be exercised with restraint, the Court
11    has wide latitude in fashioning appropriate sanctions to fit the conduct. *See Roadway*
12    *Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

13        Under the Court's inherent authority, parties and their lawyers may be
14    sanctioned for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).
15    This inherent power extends to a full range of litigation abuses, the litigant must have
16    engaged in bad faith or willful disobedience of a court's order. *Id.* at 992. Sanctions
17    under the Court's inherent authority are particularly appropriate for fraud perpetrated
18    on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991).

19

### IV.    DISCUSSION

20    **A.    Findings of fact**

21        Based on the evidence presented on the papers and through sworn testimony,
22    the Court finds the following facts, including those based on adverse inferences drawn
23    from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify.[3]

24        1.    Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered
25    law practices. Seeking easy money, they conspired to operate this enterprise and

26

27    [3] Even if their refusal was based on the Fifth Amendment privilege against self-incrimination, the
      Court still may draw adverse inferences against them in this civil proceeding. *Baxter v. Palmigiano*,
28    425 U.S. 308, 318 (1976).

3

1   formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for
2   the sole purpose of litigating copyright-infringement lawsuits. They created these
3   entities to shield the Principals from potential liability and to give an appearance of
4   legitimacy.

5       2.      AF Holdings and Ingenuity 13 have no assets other than several
6   copyrights to pornographic movies. There are no official owners or officers for these
7   two offshore entities, but the Principals are the de facto owners and officers.

8       3.      The Principals started their copyright-enforcement crusade in about 2010,
9   through Prenda Law, which was also owned and controlled by the Principals. Their
10  litigation strategy consisted of monitoring BitTorrent download activity of their
11  copyrighted pornographic movies, recording IP addresses of the computers
12  downloading the movies, filing suit in federal court to subpoena Internet Service
13  Providers ("ISPs") for the identity of the subscribers to these IP addresses, and
14  sending cease-and-desist letters to the subscribers, offering to settle each copyright-
15  infringement claim for about $4,000.

16      4.      This nationwide strategy was highly successful because of statutory-
17  copyright damages, the pornographic subject matter, and the high cost of litigation.
18  Most defendants settled with the Principals, resulting in proceeds of millions of
19  dollars due to the numerosity of defendants. These settlement funds resided in the
20  Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.
21  No taxes have been paid on this income.

22      5.      For defendants that refused to settle, the Principals engaged in vexatious
23  litigation designed to coerce settlement. These lawsuits were filed using boilerplate
24  complaints based on a modicum of evidence, calculated to maximize settlement
25  profits by minimizing costs and effort.

26      6.      The Principals have shown little desire to proceed in these lawsuits when
27  faced with a determined defendant. Instead of litigating, they dismiss the case. When
28  pressed for discovery, the Principals offer only disinformation—even to the Court.

4

1     7.    The Principals have hired willing attorneys, like Gibbs, to prosecute these
2 cases. Though Gibbs is culpable for his own conduct before the Court, the Principals
3 directed his actions. In some instances, Gibbs operated within narrow parameters
4 given to him by the Principals, whom he called "senior attorneys."

5     8.    The Principals maintained full control over the entire copyright-litigation
6 operation. The Principals dictated the strategy to employ in each case, ordered their
7 hired lawyers and witnesses to provide disinformation about the cases and the nature
8 of their operation, and possessed all financial interests in the outcome of each case.

9     9.    The Principals stole the identity of Alan Cooper (of 2170 Highway 47
10 North, Isle, MN 56342). The Principals fraudulently signed the copyright assignment
11 for "Popular Demand" using Alan Cooper's signature without his authorization,
12 holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF
13 Holdings and has no affiliation with Plaintiffs other than his employment as a
14 groundskeeper for Steele. There is no other person named Alan Cooper related to AF
15 Holdings or Ingenuity 13.

16    10.    The Principals ordered Gibbs to commit the following acts before this
17 Court: file copyright-infringement complaints based on a single snapshot of Internet
18 activity; name individuals as defendants based on a statistical guess; and assert a
19 copyright assignment with a fraudulent signature. The Principals also instructed
20 Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss
21 them otherwise.

22    11.    Plaintiffs have demonstrated their willingness to deceive not just this
23 Court, but other courts where they have appeared. Plaintiffs' representations about
24 their operations, relationships, and financial interests have varied from feigned
25 ignorance to misstatements to outright lies. But this deception was calculated so that
26 the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs
27 to identify defendants and exact settlement proceeds from them. With these granted
28 requests, Plaintiffs borrow the authority of the Court to pressure settlement.

5

**B.     Sanctions**

Although the Court originally notified the parties that sanctions would be imposed under Federal Rule of Civil Procedure 11(b)(3) and Local Rule 83-3, the Court finds it more appropriate to sanction the parties under its inherent authority. *See In re DeVille*, 361 F.3d 539, 550 (9th Cir. 2004) ("[T]he bankruptcy court's failure to specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority."). The sanctions for Plaintiffs' misconduct are as follows.

*1.     Rule 11 sanctions*

The Court maintains that its prior analysis of Plaintiffs' Rule 11 violations is accurate. (ECF No. 48.) Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm. But Plaintiffs did not conduct a sufficient investigation to determine whether that person actually downloaded enough data (or even anything at all) to produce a viewable video. Further, Plaintiffs cannot conclude whether that person spoofed the IP address, is the subscriber of that IP address, or is someone else using that subscriber's Internet access. Without better technology, prosecuting illegal BitTorrent activity requires substantial effort in order to make a case. It is simply not economically viable to *properly* prosecute the illegal download of a single copyrighted video.

Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed *prior* to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.

For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But

6

1 Denton's property is not a large estate; it is a small house in a closely packed
2 residential neighborhood. There are also no gates visible.



20 Gibbs's statement is a blatant lie. His statement resembles other statements
21 given by Plaintiffs in this and their other cases: statements that sound reasonable but
22 lack truth. Thus, the Court concludes that Gibbs, even in the face of sanctions,
23 continued to make factual misrepresentions to the Court.

24 Nevertheless, Rule 11 sanctions are inappropriate here because it is the wrong
25 sanctions vehicle at this stage of litigation. The cases have already been dismissed
26 and monetary sanctions are not available. Fed. R. Civ. P 11(c)(5)(B) (a court cannot
27 impose a monetary sanction on its own unless it issued the show-cause order before
28 voluntary dismissal). The more appropriate sanction for these Rule 11 violations is

1 what the Court had already imposed: denial of requests for early discovery. (ECF
2 No. 28.)

3     *2.    Sanctions under the Court's inherent authority*

4     In addition to Gibbs's misrepresentations, there is the matter of the ignored
5 Court Order vacating early discovery. (ECF No. 28.) The evidence does not show
6 that the Order was ignored because of miscommunication among Plaintiffs. The
7 Order was purposely ignored—hoping that the ISPs were unaware of the vacatur and
8 would turn over the requested subscriber information.

9     Then there is the Alan Cooper forgery. Although a recipient of a copyright
10 assignment need not sign the document, a forgery is still a forgery. And trying to pass
11 that forged document by the Court smacks of fraud. Unfortunately, other than these
12 specific instances of fraud, the Court cannot make more detailed findings of fraud.

13     Nevertheless, it is clear that the Principals' enterprise relies on deception. Part
14 of that ploy requires cooperation from the courts, which could only be achieved
15 through deception. In other words, if the Principals assigned the copyright to
16 themselves, brought suit in their own names, and disclosed that they had the sole
17 financial interest in the suit, a court would scrutinize their conduct from the outset.
18 But by being less than forthcoming, they defrauded the Court. They anticipated that
19 the Court would blindly approve their early-discovery requests, thereby opening the
20 door to more settlement proceeds.

21     The Principals also obfuscate other facts, especially those concerning their
22 operations, relationships, and financial interests. The Principals' web of
23 disinformation is so vast that the Principals cannot keep track—their explanations of
24 their operations, relationships, and financial interests constantly vary. This makes it
25 difficult for the Court to make a concrete determination.

26     Still, the Court adopts as its finding the following chart detailing Plaintiffs'
27 relationships. Though incomplete, this chart is about as accurate as possible given
28 Plaintiffs' obfuscation.

8



As for Van Den Hemel, Lutz, and Hansemeier, they are not without fault even though they acted under orders from the Principals. They were not merely assimilated; they knowingly participated in this scheme, reaping the benefits when the going was good. Even so, their status as non-attorneys *and* non-parties severely limits the sanctions that could be levied against them.

Despite these findings, the Court deems these findings insufficient to support a large monetary sanction—a seven-digit sanction adequate to deter Plaintiffs from continuing their profitable enterprise. Even if the Court enters such a sanction, it is certain that Plaintiffs will transfer out their settlement proceeds and plead paucity. Yet Plaintiffs' bad-faith conduct supports other more fitting sanctions.

/ / /

First, an award of attorney's fees to Defendants is appropriate. This award compensates them for expenses incurred in this vexatious lawsuit, especially for their efforts in countering and revealing the fraud perpetrated by Plaintiffs.

So far, only Morgan Pietz and Nicholas Ranallo have appeared.[4] Upon review, the Court finds Pietz's expenditure of 120.5 hours at an hourly rate of $300 reasonable based on his experience, work quality, and quantity of necessary papers filed with the Court. (ECF No. 102.) Although many of these hours were spent after the case was dismissed, these hours were spent in connection with the sanction hearings—time well spent. Similarly, the attorney's fees and costs incurred by Ranallo also appear reasonable.

Therefore, the Court awards attorney's fees and costs in the sum of $40,659.86 to Doe: $36,150.00 for Pietz's attorney's fees; $1,950.00 for Ranallo's attorney's fees; $2,226.26 for Pietz's costs; and $333.60 for Ranallo's costs. As a punitive measure, the Court doubles this award, yielding $81,319.72.[5] This punitive multiplier is justified by Plaintiffs' brazen misconduct and relentless fraud. The Principals, AF Holdings, Ingenuity 13, Prenda Law, and Gibbs are liable for this sum jointly and severally, and shall pay this sum within 14 days of this order.

Second, there is little doubt that that Steele, Hansmeier, Duffy, Gibbs suffer from a form of moral turpitude unbecoming of an officer of the court. To this end, the Court will refer them to their respective state and federal bars.

Third, though Plaintiffs boldly probe the outskirts of law, the only enterprise they resemble is RICO. The federal agency eleven decks up is familiar with their prime directive and will gladly refit them for their next voyage. The Court will refer this matter to the United States Attorney for the Central District of California. The will also refer this matter to the Criminal Investigation Division of the Internal

[4] They appeared on behalf of the Doe Defendant in the case *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

[5] This punitive portion is calculated to be just below the cost of an effective appeal.

1 Revenue Service and will notify all judges before whom these attorneys have pending
2 cases. For the sake of completeness, the Court requests Pietz to assist by filing a
3 report, within 14 days, containing contact information for: (1) every bar (state and
4 federal) where these attorneys are admitted to practice; and (2) every judge before
5 whom these attorneys have pending cases.

6      *4. Local Rule 83-3 sanctions*

7      For the same reasons stated above, the Court will refer Duffy and Gibbs to the
8 Standing Committee on Discipline (for this District) under Local Rule 83-3.

9                               **V.   CONCLUSION**

10      Steele, Hansmeier, Duffy, Gibbs, Prenda Law, AF Holdings, and Ingenuity 13
11 shall pay, within 14 days of this order, attorney's fees and costs totaling $81,319.72 to
12 Doe. The Court enters additional nonmonetary sanctions in accordance with the
13 discussion above.

14      **IT IS SO ORDERED.**

15      May 6, 2013

16
17
18                               **OTIS D. WRIGHT, II**
19                   **UNITED STATES DISTRICT JUDGE**
20
21
22
23
24
25
26
27
28